[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Cynthia S. Smith, and the defendant were married at Ridgefield. Connecticut on August 26, 1978. There are two minor children issue of this marriage Ashley Elizabeth Santini born October 12, 1983; and Lauren Deborah Santini born September 6, 1985. No other minor children have been born to the plaintiff wife since the date of marriage of the parties. The plaintiff has resided continuously in the state of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
The plaintiff is in excellent health. The plaintiff attended college for three years prior to her marriage to the defendant.
The plaintiff's financial affidavit dated November 20, 1997, shows under all assets "Ashley's funds in her possession $2500; Lauren's funds in her possession $2500." The $2500 for each child is in the form of a bank check that was drawn over one year ago and has not been deposited. The two bank checks are in the children's bedrooms. The plaintiff is presently employed as an aviation recruiter for Jet Professional. She finds flight crews for potential employers. The plaintiff has gross weekly wages of $576.92 and net weekly wages of $383. The monthly mortgage payment on the family home including taxes is $1004. The plaintiff has a weekly food bill of approximately $125, and a weekly clothing bill of $46.51. She has a liability to Chase with CT Page 1755 a balance of $2040 and a weekly payment of $50. She also shows that as a loan balance on the asset side of her financial affidavit, thereby reducing the equity in the 1993 Volkswagen Eurovan that she owns. That vehicle has a fair market value of $5400 with a loan of $2040, and an equity of $3360. The weekly fuel bill for the family home is approximately $12 to $14. The electric bill is approximately $46.50 weekly. She also has a propane bill of approximately $3 to $4 weekly. Her financial affidavit shows a water bill of $2.50 weekly. The family home uses a well and she, therefore, does not have that weekly expense. She has a phone bill of approximately $37.50 weekly, and a trash collection bill of approximately $6.50 weekly, as well as a cable bill of approximately $7.80 weekly. The plaintiff owns jewelry with a fair market value between $10,000 and $15,000. The plaintiff has a balance due for counsel fees of $18,000. The fair market value of the plaintiff's furniture is approximately $2500.
The defendant vacated the family home on Labor Day, September 1, 1997. The parties purchased the family home in December of 1978. The court finds that the fair market value of the family home located at 35 North Pleasant Rise, Brookfield, Connecticut is $200,000. It has a first mortgage with a balance of between $100,000 and $101,000. In addition, there is a debt due to the defendant's mother secured by a second mortgage in the face amount of $10,000. The $10,000 was used to make payments to the IRS. One payment of $400 has been made on the $10,000 second mortgage, thereby reducing the balance to $9600.
The parties own a business known as Santini Septic System. The business was initially started by the defendant approximately twenty-four years ago, before he married the plaintiff, as a part-time business. At the time the business started, the defendant was working as a driver for a construction company. By May of 1985, the business had grown to the point where the defendant had to give up his full-time job working as a driver for a construction company, and devote full time to the Santini Septic System business. After the defendant left his full-time job in 1985, to devote full time to the business, the parties had some lean years. The defendant took a second job in order to bring more money into the family home working from 6 p. m. to 10 p. m. five days a week. He held that job for approximately two and one-half years. The decision for the defendant to work full time at the Santini Septic System was jointly made between the plaintiff and the defendant. Both parties worked hard in building the business. The defendant ran the truck, while the plaintiff CT Page 1756 handled phone calls and dealt with real estate attorneys, realtors and billings. The defendant is presently occupying, as an office, a trailer located at Ethan Allen Highway in Ridgefield, Connecticut to run the business and is not paying rent at the present time. The parties entered into a stipulation that the gross billings of the business between January 1, 1997 and September 26, 1997, were $142,693. Most people pay the bills that are submitted to them. In the fall of 1995, the defendant purchased a truck for the business at a cost of $20,000 that was paid in cash. He also purchased the tank that goes on the back end of the truck at a cost of approximately $28,000 to $29,000, and financed that tank. The balance due on the tank is approximately $20,000. The court finds that the fair market value of the 1987 truck and tanker is $29,000 and that it has an equity of approximately $9000.
The following table shows the gross business income and net business profit for Santini Septic System for the calendar years 1991 through 1996, and shows a gross income for the period of January 1, 1997 through the third week in September, 1997.
__________________________________________________________________________ | YEAR | YEAR | YEAR | YEAR | YEAR | YEAR | TO | | ENDING | ENDING | ENDING | ENDING | ENDING | ENDING | 9/26/97| | 12/31/91 | 12/31/92 | 12/31/93 | 12/31/94 | 12/31/95 | 12/31/96 | | |__________|__________|__________|__________|__________|__________|________| | $92,537 | $113,271 | $139,041 | $151,866 | $172,284 | $197,482 |$142,693| |__________|__________|__________|__________|__________|__________|________|
The IRS served a notice on September 29, 1997, for taxes due on the 1995 joint tax return in the amount of $6,140.77, and for taxes due on the 1996 tax return in the amount of $29,418.12. The plaintiff claims that the $6,140.77 tax is not due, as that is a penalty for an alleged late filing of a return which the plaintiff claims was timely filed. The plaintiff does not dispute the $29,418.12 liability.
Both the plaintiff and the defendant agreed to have Kenneth Pia, Jr. do the appraisal of the business, but not to be bound by his opinion. The parties are in dispute as to the value of the Santini Septic System business. From the evidence presented, the court finds that its fair market value is $149,266.
On October 8, 1997, a bill was received from the city of Danbury for septic disposal for the business in the amount of CT Page 1757 $4,128.40. That bill was paid in full by the defendant by check dated October 16, 1997. The city of Danbury had also notified them that through June, 1996, there was a balance due for septic disposal of $24,637.83. The $24,637.83 Danbury pumping bill has since been paid in full. The defendant had approximately $23,000 in a retirement plan that he cashed in to pay the city of Danbury. He does not have any retirement funds left.
The defendant is in excellent health. The defendant attended college for a few months. The defendant is presently living at his mother's home.
The defendant's gross weekly income is $1635 and his net weekly income is $1015. The defendant owns a 1985 Volkswagen with a fair market value of $1500 and no loan balance. The defendant does not show any life insurance on his financial affidavit. He presently has life insurance through Manhattan Life in the amount of $500,000 with a quarterly premium of $184. The life insurance policy is a ten-year term policy to be renewed in 1998, and will require a new physical of the defendant to renew it. The defendant borrowed $2000 from his brother in 1990. He owes a balance of $1000 on that loan. His financial affidavit also shows a liability to the city of Danbury of $25,000. That debt has been paid in full. His financial affidavit also shows the liability owed to the IRS for 1996 taxes in the amount of $29,418.12. The IRS has agreed to take $1000 per month on that liability for three years. It has agreed not to levy on the liability if both parties agree to that payment. His financial affidavit shows an attorney fee liability of $1500. One thousand dollars was previously paid to that attorney. He has an additional attorney's fees liability for the present action with an estimated balance of $7500. He has already paid his attorney regarding this dissolution action between $9000 and $10,000. He has not paid any of his federal, state or self employment taxes for the calendar year 1997, with an estimated $20,000 due. He has a MasterCard liability with a balance of $3519. Twenty-five hundred dollars of that was used towards paying the city of Danbury dumping bill. He also has a liability for $1500 for the evaluation of the business. He has a monthly storage bill of $105 regarding furniture that he removed from the family home when he vacated in September of 1997. The defendant has two separate Fidelity growth stocks. One of the Fidelity growth funds has a value of $1,348.79, and the second has a value of $1,400.96. Both Fidelity growth funds are in the name of the plaintiff and the defendant jointly in survivorship. He also owns one hundred shares in CT Page 1758 Village Bank Corp. with an estimated value of $1000. Although not shown on his financial affidavit, the defendant is holding approximately fifteen checks that he has not deposited, each in the approximate amount of $150. He also has $1000 in cash at his mother's home, and also has $400 in cash on him. His financial affidavit shows a Fleet Bank checking account with a balance of $1000. The balance in that account is $1,738.91. He has a monthly food bill of approximately $600. The defendant's financial affidavit under basic expenses shows estimated rent of $1000, electric of $100, telephone of $25, and cable T.V. of $40. At the present time, he does not pay any rent or utilities to his mother, and does not pay for any of the food that he eats at her home.
As of October 23, 1997, the defendant was in arrears on a pendente lite order.
Each party provides health insurance for the benefit of the children.
The court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-56 and § 46b-56a
regarding the issues of joint custody, custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorneys fees. The court enters the following orders.
ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The defendant is ordered to pay to the plaintiff alimony in the sum of $110 per week. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant.
2. The provisions of § 46b-86 (a) and § 46b-86 (b) CT Page 1759 are applicable.
C. BY WAY OF CUSTODY AND VISITATION
1. The parties share joint custody of the minor children and the minor children shall primarily reside with the plaintiff.
2. The defendant is awarded reasonable, flexible and liberal rights of visitation that shall include, but not be limited to alternate weekends from Saturday noon through Sunday at 7 p. m., two weeks during the summer vacation, and alternating holidays. The defendant shall have the following holidays during the odd numbered years: (a) Columbus Day; (b) Veteran's Day; (c) Thanksgiving Day; (d) Christmas Day is to be alternated with one party having the children on December 24 through December 25, at 1 p. m. and the other party having the children from December 25, at 1 p. m. through December 26, at 7 p. m. For Christmas 1998, the defendant is to have the children from December 24 through December 25, at 1 p. m.; (e) Martin Luther King, Jr. Day. He shall have the following holidays during the even numbered years: (a) New Year's Day; (b) Lincoln's Birthday; (c) Washington's Birthday; (d) Good Friday; (e) Memorial Day; (f) Independence Day; and (g) Labor Day.
3. The defendant may have the children for two weeks of vacation (not consecutive), with the defendant to notify the plaintiff in writing by registered mail, return receipt or certified mail, return receipt by May 1, of each year as to each week that he elects to have the children.
D. BY WAY OF SUPPORT
1. The defendant is ordered to pay to the plaintiff support in the amount of $296 weekly in accordance with the child support guidelines.
2. The defendant shall maintain medical insurance coverage for the minor children, and the parties shall equally share the payment of any unreimbursed medical and dental expenses incurred by the children. The plaintiff shall not contract any extraordinary expenses without first consulting with the defendant except in the case of emergencies.
E. BY WAY OF PROPERTY ORDERS
CT Page 1760
1. The defendant is ordered to quitclaim to the plaintiff all his interest in the family home located at 35 North Pleasant Rise, Brookfield, Connecticut within thirty days after the date this decision is filed. The deed is to be delivered to the office of counsel for the plaintiff. The plaintiff is to pay the first mortgage and hold the defendant harmless therefrom.
2. The plaintiff is to retain all the household furnishings and furniture, jewelry and other items in her possession except for the following: (a) the grandfather's clock is to be turned over to the defendant within thirty days from the date of this decision; in addition, all other items of personal property of the defendant located in the attic of the family home are awarded to the defendant and he is to take possession of them within thirty days from the date of this decision.
3. The defendant is to retain all of the household furnishings and Furniture, and other items in his possession except for the following: (a) the scale of justice in the possession of the defendant is to be turned over to the plaintiff within thirty days from today's date.
4. The two $2500 checks that are each payable to one child are awarded to the plaintiff.
5. The 1993 Volkswagen is awarded to the plaintiff. She is to pay the loan balance and hold the defendant harmless therefrom.
6. The parties are ordered to each pay one half of whatever tax may be due to the IRS on the 1995 joint tax return in the claimed amount of $6,140.77. Each party is to hold the other party harmless from such one half that each is ordered to pay.
7. The defendant is to pay whatever taxes are due on the 1996 tax return in the claimed amount of $29,418.12 and hold the plaintiff harmless therefrom.
8. The Fidelity growth fund with a value of $1,348.79 is awarded to the plaintiff.
9. The Fidelity growth fund with a value of $1,400.96 is awarded to the defendant.
10. The one hundred shares in Village Bank Corp. shown on the defendant's financial affidavit are ordered divided equally CT Page 1761 between the parties. Both the Fidelity growth fund and the Village Bank share transfers are to take place within thirty days from today's date.
11. All of the cash that the defendant testified he had on him at the time of trial, as well as the checks that had not been deposited for the business are all awarded to the defendant.
12. The defendant is to pay the second mortgage on the family residence and hold the plaintiff harmless therefrom. He is to have the second mortgage released from the land records, or whatever other type of lien which may be on the land records regarding his mother's loan, by one year from today's date.
13. The plaintiff is ordered to transfer to the defendant all of her right, title and interest in the Santini Septic System business within thirty days from today's date.
14. The plaintiff is to pay all the liability shown on her financial affidavit and hold the defendant harmless therefrom.
15. Both motor vehicles shown on the plaintiff's financial affidavit are awarded to the plaintiff.
16. The bank accounts shown on the plaintiff's financial affidavit are awarded to the plaintiff.
17. The 1987 business truck is awarded to the defendant.
18. The bank account shown on the defendant's financial affidavit is awarded to the defendant.
19. The life insurance policy owned by the defendant is awarded to the defendant.
20. The liabilities listed on the defendant's financial affidavit under paragraphs 1, 2, 4, 6, 7, 8, 9, and 10 are all to be paid by the defendant and he is to hold the plaintiff harmless therefrom.
21. The defendant is to pay to the plaintiff a lump sum property sum of $5000 by February 10, 1999, without interest.
22. The defendant shall have the right to claim the oldest child as an exemption for federal and state income tax purposes CT Page 1762 for each year in which the is current in his alimony and support payments at the end of such calendar year.
23. The 1985 Volkswagen owned by the defendant is awarded to the defendant.
F. BY WAY OF ATTORNEYS FEES
1. No attorneys fees are awarded in favor of either party.
G. PENDENTE LITE ORDERS
1. All pendente lite orders remain in effect until the date this decision is filed. Any arrearages are not merged into the judgment and survive the judgment. In the event the parties are unable to agree as to the amount of any such arrearages, if any, and how they are to be repaid, then they will have to file a short calendar motion for that purpose.
H. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and forward it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail, return receipt or registered mail, return receipt within fifteen days after such returns have been filed for so long as there is an outstanding alimony and/or support order, or any outstanding arrearage from such order.
3. An immediate wage execution is authorized for both the support payments and the alimony payments.
Axelrod, J.